DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Washington County Court of Common Pleas. Plaintiff-Appellant Dovetail Construction Co., Inc., an Ohio corporation, sought damages from Defendants-Appellees Rolf E. and Megan Baumgartel for the balance allegedly due under certain agreements to construct a log home for appellees. Following a bench trial, the trial court found in favor of appellees and awarded them damages based on their counter-claim. Appellant appeals that judgment, as well as the trial court's denial of its motion for findings of fact and conclusions of law.
We find appellant's assignments of error to be without merit and affirm the judgment of the trial court.
 The Contract and Construction
In October 1996, appellant and appellees entered into a written contract, which provided that appellant was to construct a log home for appellees. Appellant was to build the home using a log home kit procured from an independent supplier and paid for by appellees. The contract price for this construction was $84,710. The contract price did not include any necessary work for utility installation or driveway construction. Apparently, the parties orally agreed that the charges for work performed on utility installation and driveway construction were to be billed and paid for apart from the written contract. The parties also orally agreed to the amounts of those charges.
In November 1996, after appellees acquired the requisite financing and the log home kit to be used by appellant, construction of the log home commenced.
 The Disagreements and Legal Action
While there were a number of disagreements during construction, none were of such magnitude that appellant or appellees took any formal action. In August 1997, appellees took possession of the log home and began living there. Ongoing negotiations between the parties to settle their differences were fruitless, and appellees notified appellant, by means of certified mail, that any entry upon appellees' property by appellant without appellees' express permission would be treated as a trespass.
In December 1997, appellant filed a complaint against appellees seeking both a judgment against them and foreclosure of a mechanic's lien on the log home and the property upon which it was situated. Appellees timely answered and filed a counter-claim against appellant.
In May 1998, appellees filed a motion for summary judgment. Appellant opposed appellees' motion. The trial court heard arguments on the motion in July 1998. The scope of this motion was limited to the foreclosure of appellant's purported mechanic's lien on appellees' property and whether appellant had properly perfected the lien. The trial court granted appellees' motion for summary judgment regarding the mechanic's lien in August 1998. This order is not a part of this appeal.
A number of motions, none of which are pertinent to this appeal, were filed and disposed of prior to trial. Commencing in late October 1999, a four-day bench trial was held.
The trial court filed its initial decision granting judgment to appellees on December 8, 1999. This entry was immediately followed by the trial court's "First Amended Decision" on December 9, 1999. The trial court entered a judgment in favor of appellees on their counter-claim in the amount of $20,935 plus interest and costs. The trial court found no fraud on the part of appellant and disallowed appellees' claim for treble damages.
On December 15, 1999, appellant filed a request for specific findings of fact and conclusions of law. The trial court denied the motion on the grounds that its amended decision complied with the requirements of Civ.R. 52. Appellant also filed a motion for a new trial, which was denied without a hearing.
 The Appeal
Appellant timely appealed certain decisions of the trial court, raising eleven assignments of error for our consideration.
 I. THE TRIAL COURT'S DETERMINATION OF THE AMOUNT THAT APPELLEES PAID APPELLANT UNDER THE CONTRACT IS IN ERROR.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS INTERPRETATION OF THE BUILDING CONTRACT ENTERED INTO BETWEEN THE PARTIES.
 III. THE TRIAL COURT'S DETERMINATION THAT VARIATIONS WHICH THE APPELLANT MADE FROM THE MANUFACTURER'S RECOMMENDED FASTENING PATTERN IN THE INSTALLATION OF THE ROOF ON APPELLEES' RESIDENCE REQUIRED REPLACEMENT OF THE ROOF IS UNSUPPORTED BY EVIDENCE.
 IV. THE TRIAL COURT ERRED IN NOT APPLYING THE TERMS OF THE VERBAL AGREEMENT BETWEEN APPELLANT AND APPELLEES TO DISPUTES BETWEEN THE PARTIES OVER THE DRIVEWAY.
 V. THE TRIAL COURT'S DETERMINATION TO GRANT APPELLEES AN AMOUNT ESTIMATED TO BE $1,900 FOR REMOVING RAFTER SUPPORT AND REPLACING IS NOT SUPPORTED BY THE EVIDENCE.
 VI. THE TRIAL COURT'S DETERMINATION TO GRANT APPELLEES AN AMOUNT ESTIMATED TO BE $875 FOR REWORKING COLLAR RAFTERS IS NOT SUPPORTED BY EVIDENCE.
 VII. THE TRIAL COURT'S DETERMINATION TO GRANT APPELLEES AN AMOUNT ESTIMATED TO BE $562.50 FOR CAULKING AT THE CEILING AND PAINTING BOLTS IS NOT SUPPORTED BY THE EVIDENCE.
 VIII. THE TRIAL COURT'S DETERMINATION TO GRANT APPELLEES AN AMOUNT ESTIMATED TO BE $2,765.25 FOR REMOVING BASEBOARD AND REPLACING IT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
 IX. THE COURT RECOGNIZED THAT APPELLEES VERBALLY AGREED TO SOME CHANGE ORDERS, BUT IT FAILED TO CREDIT APPELLANT FOR SOME CHANGE ORDERS WHICH WERE CONCEDED BY THE APPELLEES.
 X. THE COURT ERRED IN FAILING TO CONSIDER ALTERNATIVE THEORIES OF RECOVERY ADVANCED BY APPELLANT ON ITEMS THAT APPELLANT INITIALLY BILLED AS CHANGE ORDERS.
 XI. THE TRIAL COURT ERRED IN FAILING TO RESPOND AFFIRMATIVELY TO APPELLANT'S REQUEST FOR SEPARATE FINDINGS OF FACT AND CONCLUSIONS OF LAW.
For purposes of our analysis, we will address Assignment of Error One and Assignments of Error Three through Nine conjointly. The remaining assignments of error will be addressed in turn.
 I. Factual Findings of the Trial Court
Our analysis begins with those assignments of error that challenge the factual findings of the trial court, namely Assignment of Error One and Assignments of Error Three through Nine.
In reviewing factual findings of a trial court, the appropriate standard of review that an appellate court must apply is manifest weight of the evidence. The judgment of a trial court should not be overturned as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment. See C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Factual findings of the trial court are to be given great deference on review because the trial court is in a better position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273, 1276; see, also, Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742, 745.
 A. Amount Appellees Paid Appellant
Appellant argues that there was no evidence to support the trial court's finding that appellees had paid appellant $80,966. However, the record contains evidence, consisting of appellees' testimony, that appellees paid appellant four draws of $17,000 each, an additional $4,500 advance, $2,340 for the basement door, windows, and gable windows, and $6,126 on another invoice. These payments total $80,966, an amount also referred to by appellant in its request for findings of fact and conclusions of law as the amount paid.
Appellant's argument contests the allocations of the payments employed by the trial court. However, the trial court's interpretation of the facts and resulting allocations of payment are also supported by the evidence. Appellees testified about making payments for specific items and invoices.
Since there is some competent and credible evidence to support this finding of the trial court, appellant's First Assignment of Error is hereby OVERRULED.
 B. Replacing the Roof
Appellant argues that the trial court's finding that the roof of the new house needs to be replaced at a cost of $4,303 is against the manifest weight of the evidence. However, the record contains the testimony of several witnesses concerning the installation of the roof. The trial court credited the testimony of appellees' expert witnesses and determined that the roof had been improperly installed, thereby requiring replacement. One of appellees' witnesses testified that the reasonable cost of replacing the roof would be $4,303.
Therefore, since the trial court's finding in regard to the installation of the roof and its replacement is supported by some competent and credible evidence, appellant's Third Assignment of Error is hereby OVERRULED.
 C. The Driveway
Appellant argues in its Fourth Assignment of Error, that the trial court erred by awarding $1,300 to appellees for defective construction of a gravel driveway. Appellant argues that the agreement that encompassed the driveway was that appellees would pay appellant for time and materials.
Builders and contractors have a duty to perform construction services in a workmanlike manner. See Barton v. Ellis (1986), 34 Ohio App.3d 251,518 N.E.2d 18; see, also, Simms v. Heskett (Sept. 18, 2000), Athens App. No. 00CA20, unreported. This duty is imposed upon them as a matter of law. See id. The proper measure of damages in a situation where a contractor has failed to perform in a workmanlike manner is the cost of repairing the deficient work. See Barton, supra; see, also, McCray v. Clinton Sty. Home Improvement (1998), 125 Ohio App.3d 521, 708 N.E.2d 1075.
In the case sub judice, appellees presented a witness who testified that the driveway was defectively built and that cost of repair would be $1,300. Therefore, since the trial court's finding is supported by some competent and credible evidence, appellant's Fourth Assignment of Error is OVERRULED.
 D. Replacing Rafter Support
Appellant argues in its Fifth Assignment of Error that the cost associated with the trial court's finding that the rafter support needed replacement should not have been included in appellees' damage award.
Appellees presented expert testimony regarding the quality of workmanship throughout the house. One of these experts testified that the cost of repairing the defects in the home would be approximately $14,000. Among the defects included in this repair estimate was the rafter support, which apparently required removal and replacement. Appellees' expert testified that there are difficulties in working with the rafter support material, in this case yellow pine. He testified that although some of the resulting damage was not preventable by appellant, other problems with the rafter support were due to inappropriate construction by appellant.
Because there is some competent and credible evidence to support the trial court's finding, appellant's Fifth Assignment of Error is OVERRULED.
 E. Re-working Collar Rafters
As has been the case in many of the prior assignments of error, the resolution of this issue was a matter of the trial court crediting the testimony of one expert and not the other. Although appellant argues and his expert testified that the re-working of the collar rafters is unnecessary and may result in further damage to the home, appellees presented their own expert who testified that the rafters needed to be re-worked.
Determinations of credibility and findings of fact are given deference and will be affirmed if supported by competent and credible evidence. See C.E. Morris Co. and Seasons Coal Co., supra. Appellant's Sixth Assignment of Error is OVERRULED.
 F. Caulking and Painting
The trial court awarded some damages based on the testimony of appellees' witness, Clarence Bauerbach. Bauerbach testified that caulk should have been placed in the gap between the trim and the drywall. He also testified that certain bolts throughout the house should have been painted. The cost of these two items was included in his estimate presented to the court to cure the defects in the home.
The trial court found appellees' expert witnesses, including Bauerbach, to be credible. Once again, the record contains some competent and credible evidence to support the trial court's finding. Appellant's Seventh Assignment of Error is OVERRULED.
 G. Replacing Trim and Baseboards
In its Eighth Assignment of Error, appellant once again argues that the trial court's finding that baseboards and trim throughout the home needed to be replaced, because of mold, mottle, or stains, was against the manifest weight of the evidence.
Appellees presented testimony that the trim work throughout the home did not meet industry standards of quality and workmanship. Appellant, through its witness and president, Matthew Bennett, countered with testimony that some individuals find wood stained with mottle to be desirable and attractive. Bennett also testified that the trim would not fit right because of the rough cut boards and settling of the house.
The trial court specifically found that Matthew Bennett was not credible. There is, therefore, some competent and credible evidence to support the trial court's finding that the trim needed to be replaced. Appellant's assignment of error is OVERRULED.
 H. Crediting Appellant for Change Orders
In its Ninth Assignment of Error, appellant argues that the trial court failed to credit it for change orders that it completed. Appellees have conceded that they requested the change orders and that the change orders were completed. Specifically, appellant argues that it was entitled to a credit for the costs relating to the added half bathroom and high-efficiency natural gas water heater.
Although appellees admitted that these two items were change orders that were agreed to, the trial court found that Bennett's testimony concerning construction costs and overruns was not credible. As such, the invoices created by appellant and its president were the only evidence establishing the additional expenses. The trial court decided not to credit appellant for these change orders because it lacked credible evidence to support a finding of the actual added expenses.
Appellant's Ninth Assignment of Error is OVERRULED.
 II. Interpretation of the Written Contract
Appellant argues in his Second Assignment of Error that the trial court erred in its interpretation of the written construction contract between the parties.
The Supreme Court of Ohio has established the standard of review to be applied by courts of appeal when reviewing a trial court's interpretation of a contract. See Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 652 N.E.2d 684. The Supreme Court of Ohio stated that, "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, 474 N.E.2d 271, 272. In Nationwide, the Supreme Court of Ohio held that if a contract is clear and unambiguous then "the interpretation of [a] contract is a matter of law. Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo." Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d at 108, 652 N.E.2d at 686, citing Ohio Bell Tel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145,147, 593 N.E.2d 286, 287.
The portion of the written contract here at issue states:
 It is the understanding of the parties that the purchase price above described includes Builder's allowances for items hereinafter described. The amounts are listed at Builder's cost plus a contracting fee of 15%. It is the understanding of the parties that the purchase price shall be equal to the price described in Paragraph 2 above, provided the cost of materials do not exceed the amounts shown. In the event that the Builder's cost exceeds any item listed, the purchase price shall be increased by the amount above the allowances shown, except labor costs for work described, for which purchaser is responsible only for costs up to 10% above allowances shown.
The items for which the allowances were given were described and listed in a subsequent portion of the contract. This subsequent list has as one of its headings, the term "estimate."
Appellant argues that the above-cited contract provision, along with the subsequent list of described items, establishes that the amounts given as costs for the items listed were merely estimates. As such, appellant claims that he was entitled to recover from appellees all of its expenses, totaling $7,671 in additional labor and material costs.
On the other hand, appellees argue that the first two sentences of this contract provision establish that the construction contract was in fact a bid and that the amounts given were not merely estimates but were actual costs plus a fifteen-percent contractor's fee. Therefore, appellees claim that they are responsible only for the amounts listed in the contract, plus any authorized increases. According to appellees, the remainder of the contract provision addresses permissible increases in the contract price.
In its decision and entry, the trial court stated that "[Appellees] were clear from the beginning that they needed a firm price for the contract as they only had a set amount of credit available to them." The trial court also found that appellant had not proven the "real cost" of the materials and labor. Further, the trial court determined that appellant's president, Matthew Bennett, "did not obtain all of the necessary estimates prior to entering into this contract." According to appellant's argument, the trial court's finding that appellant did not prove the "real cost" of the material and labor means that the trial court interpreted the contract as a set bid and not an estimate.
The provisions of the contract appear to conflict. On one hand, the contract specifically states that the contract amounts listed are the builder's actual cost plus a fifteen-percent contractor's fee. On the other hand, the contract lists the amounts under the heading of "estimates."
At best, appellant can claim the existence of an ambiguity. When there is an ambiguity in a written contract that was prepared by one of the parties to the contract, the law of Ohio is clear as to the approach to be utilized by the court to resolve and appropriately interpret such an ambiguity.
Appellant was the author of those terms and they will be construed against him. In McKay Mach. Co. v. Rodman, * * * the Ohio Supreme Court held that it "is well established that where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. In other words, he who speaks must speak plainly or the other party may explain to his own advantage."
Sites v. Moore (1992), 79 Ohio App.3d 694, 700, 607 N.E.2d 1114,1117-1118 (citations omitted), citing Smith v. Eliza Jennings Home (1964), 176 Ohio St. 351, 199 N.E.2d 733, quoting McKay Mach. Co. v. Rodman (1967), 11 Ohio St.2d 77, 80, 228 N.E.2d 304, 307; see, also, Ottery v. Bland (1987), 42 Ohio App.3d 85, 87, 536 N.E.2d 651, 654; Ford Motor Co. v. John L. Frazier Sons Co. (1964), 8 Ohio App.2d 158, 161,196 N.E.2d 335, 337-338.
Based on the foregoing rules of interpretation, we find that the trial court's interpretation of this contract was not erroneous. Ambiguities are to be construed against the drafter of the contract, in this case, appellant. Therefore, this contract laid out the actual cost of the materials and labor stated in the contract, just as the trial court ruled.
Appellant's Second Assignment of Error is OVERRULED.
 III. Alternate Theories of Recovery
In its Tenth Assignment of Error, appellant argues that the trial court erred by not considering alternate theories of recovery for items initially billed as change orders. Appellant makes this argument regarding two separate groups of expenses incurred by it: 1) expenses above the amounts bid for providing certain items listed in the contract ("Group A"), and 2) expenses for items not included in the contract ("Group B").
Ohio law clearly states,
[A]n equitable action in quasi contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact. The mere fact that issues exist as to the creation of the contract or the construction of its terms does not alter this rule.
Caras v. Green Green (June 28, 1996), Montgomery App. No. 14943, unreported, quoting Ryan v. Rival Manufacturing Co. (Dec. 16, 1981), Hamilton App. No. C-810032, unreported; see, also, Sammarco v. Anthem Ins. Cos., Inc. (1998), 131 Ohio App.3d 544, 723 N.E.2d 128, appeal allowed (1999), 85 Ohio St.3d 1446, 708 N.E.2d 211, appeal dismissed (1999), 87 Ohio St.3d 1227, 719 N.E.2d 963.
Appellant admits that the items and expenses found in "Group A" are specifically stipulated in the written construction contract. Therefore, no alternate theory of recovery applies to these items and the trial court properly disregarded any argument by appellant concerning alternative theories of recovery as to "Group A" expenses. See id.
Appellant claims that the remaining expense items, "Group B," are not items addressed in the contract and that it is, therefore, entitled to recover expenses for these items based on a theory of unjust enrichment or implied contract.
However, the written contract provided procedures for change orders and additional expenses, which would include the claimed "Group B" expenses. Therefore, recovery for the items mentioned in "Group B" should be based on a breach of contract claim. See Caras, supra.
Further, since the trial court found Matthew Bennett not credible concerning his testimony about change orders and expenses, the trial court was not required to address theories of recovery that were not, in its view, supported by the evidence.
Appellant's Tenth Assignment of Error is OVERRULED.
 IV. Findings of Fact and Conclusions of Law
In its final assignment of error, appellant argues that the trial court committed reversible error by denying its request for findings of fact and conclusions of law.
"It is clear that the provisions of Civ.R. 52 are mandatory in nature and that the failure to respond to a timely motion for findings of fact and conclusions of law constitutes prejudicial error." Reineck v. Randall (1984), 20 Ohio App.3d 97, 99, 484 N.E.2d 1061, 1063.
However, the Tenth District Court of Appeals has held that a trial court's detailed decision entry, wherein the court has laid out its findings of fact and conclusions of law, may satisfy the requirements of Civ.R. 52. See Drake Ctr. v. Department of Human Servs. (1998),125 Ohio App.3d 678, 709 N.E.2d 532. A decision entry satisfies the requirements of Civ.R. 52 where it "sufficiently sets forth the basis of its ruling, and this court has an adequate basis upon which to decide the assignments of error presented." Abney v. Western Res. Mut. Cas. Co. (1991), 76 Ohio App.3d 424, 431, 602 N.E.2d 348, 352; see, also, Drake Ctr. v. Department of Human Servs., supra. See In re Fetzer (1997),118 Ohio App.3d 156, 692 N.E.2d 219, appeal not allowed (1997),78 Ohio St.3d 1513, 679 N.E.2d 309.
The eight-page decision entry issued by the trial court in this case satisfies the requirements of Civ.R. 52. The trial court's entry, along with the extensive record in this case, has enabled us to adequately address all the assignments of error raised by appellant. Therefore, the trial court did not err by denying appellant's request for findings of fact and conclusions of law. And, even if this denial was erroneous, we would find any error based on this denial to be harmless. See Moore v. Moore (Mar. 31, 1987), Athens App. No. 1258, unreported.
Appellant's Eleventh Assignment of Error is OVERRULED.
Accordingly, appellant's assignments of error are OVERRULED in toto and the judgment of the trial court is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellees recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the WASHINGTON COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
Abele, P.J., and Kline, J.: Concur in Judgment Only.